UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCOTT K. POULTON,

                    Plaintiff,                07-CV-6258

v.                                            **DECISION
                                              And ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____


## INTRODUCTION

    Plaintiff, Scott K. Poulton ("Poulton" or "plaintiff") brings
this action pursuant to the Social Security Act, codified at
42 U.S.C. § 405(g) and 1383(c)(3), seeking review of a final
decision of the Commissioner of Social Security, denying his
application for Disability Insurance Benefits ("DIB").
Specifically, Poulton alleges that the decision of an
Administrative Law Judge ("ALJ") who heard his case was erroneous
because it was not supported by substantial evidence contained in
the record, or was legally deficient and therefore he is entitled
to judgment on the pleadings.  The Commissioner moves for judgment
on the pleadings on the grounds that the ALJ's decision was
correct, was supported by substantial evidence, and was made in
accordance with applicable law.

    For the reasons that follow, this Court finds that the
Commissioner's decision is not supported by substantial evidence
and accordingly I grant the plaintiff's motion for summary judgment

and determine that plaintiff is "disabled" pursuant to 42 U.S.C. § 423(d).

## BACKGROUND

On January 23, 2004 plaintiff Scott K. Poulton, a 42 year old with a high school education filed an application for disability insurance benefits claiming that he had become unable to work as a painter as of March 25, 2003 because of a compression fracture of the fourth vertebra of his back, shattered heels in both feet, and depression resulting from a fall from a ladder while painting at a housing development. (Tr. 44A-45, 51). The application was denied initially and on reconsideration by the State Disability Determination Service on April 26, 2004. (Tr. 11). Plaintiff requested an administrative hearing which was held via video conferencing on September 12, 2006, at which plaintiff was represented by an attorney. (Tr. 387-415).

On October 12, 2006 the ALJ determined based on the hearing and the evidence in the record that plaintiff did not suffer from a disability under the Social Security Act. A disability is defined by 42 U.S.C. § 423(d) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…" 42 U.S.C. § 423(d) (1991). After reviewing the record the ALJ found that the plaintiff's statements "concerning the intensity, persistence and limiting effects" of the plaintiff's symptoms were not entirely

2

credible.  (Tr. 15).  The ALJ determined that plaintiff was not engaged in substantial gainful activity; that plaintiff had a history of a lumbar spine fracture, bilateral calcaneal fractures, and lumbar spine degenerative disc disease which are severe impairments; that plaintiff's conditions either individually or in combination with his other impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; that plaintiff did not have the capacity to perform his past work, and that plaintiff retained the functional capacity to perform jobs that exist in significant numbers in the national economy including light work activities.  (Tr. 13-19).   At the September 12, 2006 hearing vocational expert, Tony Melanson testified that an individual with the same education and vocational background as Poulton and who could perform simple, routine sedentary work involving repetitive tasks, which did not require a great deal of concentration and was limited in performing tasks not requiring overhead work and avoiding heights, stairs and uneven surfaces could perform the unskilled sedentary jobs of a systems surveillance monitor, an inspector/tester, or a packer.  (Tr. 406-409).  On March 30, 2007 Poulton's appeal of the ALJ's decision to the Appeals Council was denied, and on May 18, 2007 the plaintiff filed this action.  (Tr. 4-6).

## DISCUSSION

I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Disability Insurance Benefits.

That section also directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as " such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. <u>See</u>, <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2nd Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

"Though [the court] must credit an ALJ's findings if supported by substantial evidence, we retain a responsibility to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act…is remedial in purpose." *citing* <u>McBrayer v. Secretary of Health and Human Services</u>, 712 F.2d 795, 798-99 (2nd Cir. 1983); <u>Dousewicz v. Harris</u>, 646 F.2d 771, 773 (2nd Cir. 1981). Defendant asserts that the decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters,</u>

Inc., 842 F.2d 639 (2nd Cir. 1988).   If, after a review of the
pleadings, the court is convinced that "the plaintiff can prove no
set of facts in support of [his] claim which would entitle [him] to
relief," judgment on the pleadings may be appropriate.  See, Conley
v. Gibson, 355 U.S. 41, 45-46 (1957).

A District Court should order payment of benefits in cases
where the record contains persuasive proof of disability and remand
for further evidence would serve no purpose. Carrol v. Sec. of
Health and Human Serv., 705 F.2d 638 (2nd Cir. 1981).   The goal of
this policy is "to shorten the often painfully slow process by
which disability determinations are made." Id.  Because this court
finds that (1) the ALJ's decision was not supported by substantial
evidence and (2) the record contains substantial evidence of
disability such that further evidentiary proceedings would serve no
purpose, judgment on the pleadings is granted for the plaintiff.

II.   Medical History.

On March 25, 2003 Poulton fell 25 feet from a ladder while
painting in a housing development  and as a result was hospitalized
at Rochester General Hospital ("RGH") until April 9, 2003.
(Tr. 149-71).   The plaintiff underwent bilateral open reduction
internal fixation of both heels after an x-ray revealed bilateral
calcaneal heel fractures.   (Tr. 153-56, 163-65).   X-rays of the
plaintiff's lumbar spine showed an L4 anterior compression
fracture.  (Tr. 158).  After discharge from RGH Poulton was treated
at Hill Haven Nursing Home for rehabilitation until June 13, 2002.
(Tr. 173-266).

On May 16, 2003 the plaintiff was examined by M. Gordon Whitbeck, Jr., M.D.  (Tr. 297-98).  Dr. Whitbeck also examined x-rays of the plaintiff's lumbar spine which were taken at the hospital that revealed healing of the L4 compression fracture with minimal hints of kyphosis but with some loss of lumbar lordosis. Dr. Whitbeck diagnosed an acute L4 compression fracture and cervical spondylosis without myelopathy and advised Poulton to continue wearing his back brace.  Id.

On April 16, 2003 the plaintiff was examined by Gregory S. Finkbeiner, M.D., from Greater Rochester Orthopaedics, P.C. while in Hill Haven Nursing Home.  (Tr. 314).  In a report dated April 16, 2003 Dr. Finkbeiner stated that x-rays of the heels were taken that revealed stable internal fixation and restoration of the posterior facette. "Disability: Total."  Id.  On May 14, 2003 x-rays were taken which showed that both feet had stable internal fixation with interval healing across the fracture site.  (Tr. 311).  Dr. Finkbeiner noted that the plaintiff was to begin ankle, subtalar and mid-foot ranges of motion, and some general strengthening and modalities.  Id.  On June 11, 2003 the plaintiff again saw Dr. Finkbeiner who noted that there was some mild swelling of the plaintiff's feet and that he had regained range of motion in his ankle.  The plaintiff had significant stiffness in the subtalar joint bilaterally and was grossly neurovascularly intact.  Dr. Finkbeiner again opined that Poulton's disability was total. (Tr. 310).

Poulton was discharged from Hill Haven Nursing Home on June 13, 2003 in stable condition. (Tr. 173, 175). It was noted that the plaintiff would require home care for a short period until he started outpatient treatment. (Tr. 175). It was recommended that Poulton continue to ambulate and increase walking distances as his condition would tolerate. Id. The plaintiff began outpatient therapy at RGH on June 23, 2003. (Tr. 271-92).

The plaintiff was examined by Dr. Whitbeck on June 20, 2003. (Tr. 296). Poulton was beginning to walk using arm canes. The plaintiff was able to forward flex his back to the level of his shins and extend past neutral without difficulty. There was no tenderness to palpitation or percussion along his cervical, thoracic or lumbar spine. A cursory neurologic examination revealed no deficits. Dr. Whitbeck diagnosed the plaintiff with a healing L4 compression fracture with continued complaints of back pain. AP and lateral x-rays of the lumbar spine revealed a compression fracture at L4 and overall alignment unchanged. Dr. Whitbeck concluded that the plaintiff was temporarily totally disabled. Id.

On July 21, 2003 the plaintiff returned to Dr. Finkbeiner for an examination of his ankles who noted that although he had minimal swelling and excellent ankle range of motion, there still was significant stiffness in the subtalar joint with some slight increased motion on the left compared to the right. (Tr. 309) X-rays were taken that showed healing across the fracture sites and stable fixation. Dr. Finkbeiner opined that the plaintiff could

7

gradually return to his activities to the extent he could tolerate. He concluded that plaintiff's "Disability: Total." <u>Id</u>. The plaintiff returned to Dr. Finkbeiner's office on August 18, 2003 with minimal improvement since the last examination. (Tr. 308). Poulton had restricted subtalar range of motion, but moderate tenderness in the sinus tarsal region bilaterally. The plaintiff complained of a fair amount of pain and difficulty with any prolonged standing or walking. Again, he concluded that plaintiff's "Disability: Total." <u>Id</u>.

Poulton returned to Dr. Whitbeck on August 18, 2003 after completing physical therapy for his lower back. (Tr. 295). The plaintiff complained of low back pain with some occasional radiation into his buttocks and thighs, but stated that his symptoms are 75% improved compared to his preoperative condition. Poulton was able to forward flex to the level of his knees with significant difficulty and his extension and lateral bending were also performed but with significant difficulty. Dr. Whitbeck noted some tenderness in the midline and over the paralumbar musculature from L4-S1 and concluded that the plaintiff was moderately symptomatic. Dr. Whitbeck opined that the plaintiff remained temporarily totally disabled ". . . on the basis of his L-4 compression fracture as well as his lower extremity trauma." <u>Id</u>.

Dr. Heck conducted a consultative examination of Scott Poulton on September 4, 2003. In a detailed report which was based upon a physical examination as well as a review of his medical records, he noted that Mr. Poulton fell backwards onto his feet from a height

8

of 25 feet on March 25, 2003 and was taken to Rochester General Hospital where he was diagnosed as having bi-lateral heel fractures (calcaneal fractures) and an L4 compression fracture.  He was treated by Dr. Greg Finkbeiner, an orthopedic surgeon and had an open reduction and internal fixation "with plate and screws on both feet with 11 screws on the right foot and 10 screws on the left foot."  (Tr. 268) He was also treated by Dr. Whitbeck for his compression fracture which was treated with a back brace.  His primary care physician, Dr. Goldstein treated him for situational depression with Zoloft and his pain medication was interfering with the Zoloft treatment.  Dr. Heck noted that Mr. Poulton related that his feet were "real stiff and he has to walk flat footed.  The first three toes on his right foot have a tendency to curl underneath him and he has a lot of difficulty walking up and down stairs and doing any prolonged walking or standing."  Dr. Heck's opinion is revealing and supports a finding of disability. Dr. Heck was asked to examine Mr. Poulton at the behest of the Workers Compensation carrier and concluded, "At the present time, I think [Poulton] has a temporary total disability.  I anticipate that he is going to be a minimum of one year post-injury before he will have stable injuries to his lumbar spine and to his feet." "Because of the persistent loss of subtalar motion with peroneal stressing of these joints, I anticipate that this man may need to have subtalar arthrodesis[1] in the future and may need to have a

---

[1]  Arthrodesis is a surgical procedure, also known as joint fusion.  The goal of arthrodesis is to provide pain relief, restore skeletal stability, and improve alignment in the affected joint.  WebMD, April 1, 2008 Article, Shannon Erstad, MBA/MPH (Author)

triple arthrodesis on the right foot because of the fact that the right foot did involve the calcaneal cuboid joint." (Tr. 270).

Dr. Heck's examination and opinion support Poulton's claim that it is difficult for him to stand or walk and, indeed, he opines that in the future Poulton will need additional corrective surgery to deal with his difficulty to walk and stand.  In addition, Dr. Heck substantiates Mr. Poulton's pain and the need for pain medication.

Dr. Finkbeiner examined the plaintiff on September 10, 2003. (Tr. 307).  Poulton complained of discomfort with weight bearing and was using orthotics and a crutch.  The plaintiff remarked that he had plateaued at therapy and that Darvocet was helping control his pain.  Dr. Finkbeiner noted that the plaintiff had minimal swelling and restricted subtalar motion bilaterally.  X-rays were taken which revealed well-healed fractures with stable fixation. Id.

On November 5, 2003 the plaintiff returned to Dr. Finkbeiner with complaints of discomfort with prolonged weightbearing activities.  (Tr. 306).  The plaintiff continued to have restricted subtalar motion bilaterally and stiffness in his ankle joint.  Id.

On November 6, 2003 the plaintiff was discharged from RGH Physical Therapy.  (Tr. 292).  The report noted that the plaintiff had achieved his lumbar goals, but only partially achieved his ankle goals.  Poulton's lumbar range was 100 degrees in flexion, right and left sidebend, 75 degrees rotation left and right and 50-75 degrees extension.  Physical therapist, Amy Heald concluded that Poulton's feet were more of an issue than his back.  Id.

Poulton was examined by Dr. Whitbeck on November 17, 2003 for complaints of low back pain.  (Tr. 294).  The plaintiff was able to move around the examining room without difficulty and could forward flex midway between his knees with moderate difficulty.  Poulton also had moderate difficulty with extension and lateral bending. Dr. Whitbeck noted that the plaintiff had some tenderness in the midline and over the paralumbar musculature from L4-S1.  X-rays were taken of the lumbar spine which were consistent with a healed L4 compression fracture.  Dr. Whitbeck diagnosed the plaintiff with residual low back pain status post moderate L4 compression fracture and opined that the plaintiff is still temporarily totally disabled.  Dr. Whitbeck further opined that he would not place any restrictions on the plaintiff although certain activities may cause him discomfort.  Id.

On December 17, 2003 the plaintiff returned to Dr. Finkbeiner with complaints of increased pain on his right side.  (Tr. 305). Poulton still had restricted subtalar motion bilaterally and some stiffness in his ankle joint.  Dr. Finkbeiner diagnosed the claimant with onychomycosis[2] bilaterally which was due to prolonged immobilization and difficulty with care to the foot while in a cast.  Dr. Finkbeiner opined that the claimant is totally disabled. Id.

---

[2]Onychomycosis (OM) refers to a fungal infection that affects the toenails.  Although not life-threatening, it can cause pain, discomfort and disfigurement and may produce serious physical and occupational limitations.  EMedicine.com, April 3, 2007 Article, Onychomycosis, Mark Blumberg, MD, MS, Consulting Staff, New England Dermatology and Laser Center, Springfield, Massachusetts.

Poulton was examined on January 7, 2004 by Naseer Tahir, M.D. at the Genesee Valley Anesthesiologists, P.C. (Tr. 302-03). The plaintiff complained of severe pain in the heel and ankle region and low back for which he was taking Zoloft and Darvocet. (Tr. 302). Poulton listed weather changes, walking, sitting, or stair climbing as factors that increase the pain. Id. The plaintiff stated that he was no longer receiving treatments and that his condition had plateaued. (Tr. 303). Dr. Tahir noted that the plaintiff's gait was normal without any antalgic component and the range of motion in his feet had some restricted subtalar motion bilaterally. Lumbar spine flexion and extension were performed without any difficulty and the plaintiff had a negative straight leg raise bilaterally. Upon deep palpitation there was no tenderness over the lumbar spine, S1 joint, or trochanteric bursa. Dr. Tahir opined that the plaintiff's L4 compression fracture had healed properly. Id. He found that Poulton continued to have chronic pain "in both bilateral heels and ankles which he describes as sharp, stabbing and also occasionally burning in sensation. He also continues to have low back pain . . . but that the heel and ankle pain is most severe." Id. Recognizing that Poulton had continued pain, Dr. Tahir modified his medications and started Poulton on Neurontin, 300 mg and to discontinue Darvocet and start instead Vicodin, 5/500 mg maximum four tablets per day for pain. Id. At 303.

The plaintiff saw Dr. Finkbeiner on January 28, 2004. (Tr. 304). Poulton's medication had been switched from Darvocet to Motrin and he was started on Neurontin. The plaintiff stated that

his condition had improved since the change in medication.  Upon examination the plaintiff still had restricted subtalar motion bilaterally.  Dr. Finkbeiner opined that the plaintiff was totally disabled but noted that he was encouraged by the plaintiff's earlier results and improvement.  Id.

Poulton underwent a consultative examination on March 9, 2004 by George Alexis Sirotenko, D.O.  (Tr. 316-19).  Dr. Sirotenko noted that the plaintiff was able to bathe, dress himself, cook, clean, and do laundry and shop.  (Tr. 317).  Upon examination Poulton had a mild antalgic gait, had difficulty walking on his heels and toes, was able to squat 75% and was able to rise from a chair without difficulty.  Id.  Plaintiff's lumbar spine showed full flexion, extension, lateral flexion and full rotary movement bilaterally.  (Tr. 318).  The plaintiff had full range of motion in his hips, knees and ankles bilaterally, but displayed an inability to elicit any bilateral Achilles reflexes.  Id.  Dr. Sirotenko opined that the plaintiff should avoid standing or walking for longer than two hours at a time and lifting any objects over his head to prevent axial load.  (Tr. 319).  He stated that the plaintiff may have difficulty with walking up stairs, inclines or ladders on a repetitive basis or repetitive forward flexion, extension or rotation.  Dr. Sirotenko further stated that Poulton was able to push, pull, and lift objects of a moderate degree on an intermittent basis and did not require any assistive device.  Id.

On the same day (March 9, 2004) the plaintiff underwent a consultative psychiatric examination by psychologist, John Thomassen, Ph.D.  (Tr. 321-24).  The plaintiff was cooperative

13

throughout the examination and his thought processes were coherent and goal directed with no evidence of thought disorder.  (Tr. 322). Poulton's recent and remote memory skills were intact, his insight was fair, and his cognitive functioning was estimated to be in the average range.  (Tr. 323).  Dr. Thomassen opined that the plaintiff should be able to perform rote tasks and follow simple directions, was able to do complex tasks consistent with his skill level and had a fair ability to relate with co-workers and cope with stress. Id.  He concluded that the plaintiff's allegations of psychiatric disability were inconsistent with his examination findings and that the plaintiff had no discernible psychological difficulties. (Tr. 323, 324).

X-rays of the plaintiff's lumbrosacral spine were taken by Jitendra M. Sanghvi, M.D. on the same day as the consultative examinations.  (Tr. 320).  The x-rays revealed 50% old anterior compression fracture of the body of L4 and moderately severe degenerative disc disease at L5-S1 with sclerosis of the vertebral bodies, vacuum and anterior osteophytes.  Id.

On April 23, 2004 disability analyst C. Kloepfer completed a physical residual functional capacity assessment based upon a review of the plaintiff's file.  (Tr. 346-51).  Kloepfer concluded that the plaintiff is able to occasionally lift and/or carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk about 6 hours in an 8 hour day, sit about 6 hours in an 8 hour day, and has no limitations on his ability to push and/or pull.  (Tr. 347).

An MRI of the lumbar spine was performed on the plaintiff on May 14, 2004 by Ahmad Monajati, M.D., F.A.C.R.   (Tr. 377).

Dr. Monajati diagnosed an old compression fracture of L4 without significant changes compared to the CT scan of March 25, 2003, and degenerative disease at L4-L5 without compromise of the neural foramina or spinal canal.  <u>Id</u>.

The plaintiff was examined by Dr. Whitbeck on July 2, 2004. (Tr. 359).  After review of the MRI on May 14th Dr. Whitbeck found a healed L4 compression that is of moderate severity, severe degenerative disc disease at L5-S1, and moderate bilateral foraminal stenosis at L5-S1.  He suggested that the plaintiff engage in some low impact fitness activity on a regular basis. Dr. Whitbeck opined that since the plaintiff has chronic pain syndrome it is "reasonable" to consider him temporarily totally disabled.  <u>Id</u>.

Poulton was examined by Dr. Finkbeiner on July 2, 2004, September 1, 2004, August 5, 2005, May 31, 2006, and June 21, 2006. (Tr. 371-76).  Dr. Finkbeiner continued to find restricted subtalar motion and pain or tenderness in the sinus tarsi, mainly on the left side.  <u>Id</u>.  On June 22, 2006 Dr. Finkbeiner wrote a letter in which he expressed his belief that the plaintiff is totally disabled from any form of employment, including sedentary work because of his back injury.  (Tr. 370).

The plaintiff continued to receive treatment at the Genesee Valley Pain Center from July 19, 2004 to February 15, 2006. (Tr. 360-68).  During this time the plaintiff took various pain medication including Duragesic, Avinza, Vicodin, Norco, and Advil. <u>Id</u>.

On May 31, 2006 the plaintiff underwent another physical consultative examination by Dr. Sirotenko.   (Tr. 352-54). Dr. Sirotenko noted that the claimant walked with an antalgic gait tending to favor the balls of his feet and was able to heel walk with bilateral pain.  (Tr. 353).  The plaintiff was able to squat 100%, his station was normal, and he was able to rise from a chair without difficulty.  Id.  Dr. Sirotenko opined that the plaintiff's lumbar and cervical spine had full flexion and extension, full lateral flexion bilaterally, full rotatory movements bilaterally, no point tenderness at L4, and no S1 joint or sciatic notch tenderness.  (Tr. 353-54).  The plaintiff had full range of motion of the knees bilaterally, his ankle dorsiflexion was 10 degrees bilaterally,  and  his  plantar  flexion  was  0.    (Tr.  354). Dr. Sirotenko concluded that the plaintiff would benefit from activities of a sedentary nature, should avoid prolonged standing, stairs, inclines, and ladders, and would be able to push, pull, or lift objects of a moderate degree of weight on an intermittent basis.  Id.

On the same day Dr. Sirotenko completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 355-58).  Dr. Sirotenko opined that the plaintiff was able to occasionally lift 25 pounds, frequently lift 20 pounds, stand or walk of at least 2 hours in an 8 hour day, and occasionally balance, kneel, crouch, crawl  or stoop.  (Tr. 355-56). Dr. Sirotenko further concluded that sitting and pushing and/or pulling were not affected by Poulton's impairment.  (Tr. 356).

Marshall Goldstein, M.D., Poulton's family physician, wrote a letter dated June 9, 2006 in which he stated that the plaintiff had been treated for depression. (Tr. 369). Dr. Goldstein noted that the plaintiff had taken Zoloft which had helped to some degree. Dr. Goldstein opined that the plaintiff's pain and limitations have rendered him unemployable. Id.

III. The ALJ Erred in not Granting the Opinions of the Plaintiff's Treating Physicians (Drs. Finkbeiner and Whitbeck) Greater Weight Than the Opinion of Dr. Sirotenko.

Controlling weight is given to the opinions of the plaintiff's treating sources if supported by substantial evidence, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 1527(d)(2). The opinions of a consultative examiner "are to be accorded 'some weight,' or less weight than the inherently more reliable opinions of treating sources." Goldthrite v. Astrue, 2008 WL 445770 *10 (W.D.N.Y. 2008); Westphal v. Eastman Kodak Co., 2006 WL 1720380 *4, 5 (W.D.N.Y. 2007). The ALJ erred in not granting the treating physicians' opinions controlling weight and instead granting significant weight to the opinion of a consultative examiner, Dr. Sirotenko, since the treating physicians' opinions are well-supported by clinical and laboratory diagnostic techniques

and based on continuous treatment over a period of time. (Tr. 18); Gonzalez v. Barnhart, 491 F.Supp.2d 329 (W.D.N.Y. 2007).

Drs. Finkbeiner and Whitbeck had a treatment relationship with the plaintiff that extended over a period of several years and both have consistently opined that the plaintiff is totally disabled. (Tr. 294-96, 304-14, 359, 370). The ALJ erroneously found that the treating physician's opinions were not persuasive because they did not set forth any specific functional limitations. (Tr. 18). An ALJ may not rely merely on the absence of evidence in reaching his decision "without making an affirmative effort" to fill in any gaps in the record. Tornatore v. Barnhart, 2006 WL 3714649 *3 (S.D.N.Y. 2006); quoting Garcia v. Barnhart, 2003 WL 68040 *3 (S.D.N.Y. 2003). Furthermore, Dr. Finkbeiner wrote a letter dated June 22, 2006, in which he stated that the plaintiff is totally disabled from any form of employment, including sedentary work due to his back injury. (Tr. 370). This opinion should have been granted the weight accorded to a treating physician's opinion, considering that it comprehensively sets forth the plaintiff's vocational restrictions and represents treatment of plaintiff over a significant period of time.

The opinions of Drs. Finkbeiner and Whitbeck are supported by substantial evidence in the record and should be accorded controlling weight. X-ray, CT scan, and MRI findings support the fact that the plaintiff suffers from an L-4 compression fracture and bilateral calcaneal heel fractures. (Tr. 155, 158, 163-66, 294, 296-98, 307, 309, 314, 320, 377). Moreover, the ALJ did not

18

dispute these objective findings in his decision. (Tr. 13) (finding that the plaintiff suffers from severe impairments of lumbar spine fracture, bilateral calcaneal fractures and lumbar spine degenerative disease). X-rays taken on March 9, 2004 revealed 50% old anterior compression fracture of the body of L4 and moderately severe degenerative disc disease at L5-S1 with sclerosis of the vertebral bodies, vacuum and anterior osteophytes. (Tr. 320). Evidence that the L4 compression fracture continued to restrict the plaintiff is found in Dr. Monajati's diagnosis on March 14, 2004. (Tr. 377). After reviewing the results of an MRI taken on May 14, 2004 Dr. Monajati diagnosed an old compression fracture of L4 without significant changes compared to the CT scan of March 25, 2003, and degenerative disease at L4-L5 without compromise of the neural foramina or spinal canal. (Tr. 377).

A specialist's opinion is entitled to greater weight than those of non-treating physicians because it is an "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 404.1527(d)(5). Orthopedic surgeons, Drs. Heck, Whitbeck, and Finkbeiner are specialists in the field of the musculoskeletal system and therefore their opinions regarding the plaintiff's L4 compression fracture and bilaterally fractured calcaneal heels are entitled to more weight than the opinion of osteopathic non-treating physician, Dr. Sirotenko.

The ALJ improperly "assigned significant weight to Dr. Sirotenko's opinion pursuant to 20 C.F.R. 404.1527. In doing so, the ALJ essentially ignored the opinions of the treating physicians, Gregory S. Finkbeiner, M.D., Gordon Whitbeck, Jr.,

M.D., Marshall Goldstein, M.D. and consultative examining physician and orthopedic specialist, Charles Heck, M.D.   The combined opinions and evidence supplied by those physicians clearly support a finding of disability.   Additionally, the objective medical evidence in the record supports a finding of disability and also supports the credibility of plaintiff's testimony as to his pain and disability.   Significantly, Dr. Heck also opined that Poulton had been receiving the proper care and recommended ". . . that he remain under Dr. Whitbeck's care and Dr. Finkbeiner's care.   I think to date his care has been excellent."   (Tr. 270).

IV.   <u>The ALJ Improperly Discounted the Plaintiff's Statements Regarding his Symptoms.</u>

Since symptoms sometimes suggest a greater severity of an impairment than can be shown by objective medical evidence alone, the Court must carefully consider any information the plaintiff submits concerning his symptoms.   20 C.F.R. § 404.1529(c)(3).   In deciding whether to accept evidence of subjective testimony in support of a plaintiff's claim for disability, the ALJ must perform a two-stage analysis.   20 C.F.R. § 404.1529(c).   The claimant is required to (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.   <u>Id</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996).   "Absent evidence of malingering, the ALJ is required to accept the claimant's testimony."   <u>Goldthrite</u>, 2008 WL 445770 at 5. "In failing to assign a claimant substantial credibility, the ALJ is required to make specific findings, including a clear and convincing rationale for the rejection, stating which testimony is

not credible and what facts in the record lead to that conclusion." Id; Smolen, 80 F.3d at 1284.

The ALJ found that the plaintiff's impairments could reasonably be expected to produce the alleged symptoms, but the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (Tr. 15). The ALJ cannot summarily dismiss the plaintiff's statements concerning his symptoms merely because of the presence of opinions regarding the improvement in plaintiff's condition, as discussed above. (Tr. 15-17). The plaintiff's statements regarding his conditions are indicative of his vocational restrictions and limitations and should have been considered in the ALJ's functional capacity assessment. On September 4, 2003 during an examination by Dr. Heck, Poulton complained that the pain in his back prevented him from sitting for long periods of time and that he has a lot of difficulty walking up and down stairs and doing any prolonged walking or standing. (Tr. 268). On January 7, 2004 Poulton told Dr. Tahir that weather changes, walking, sitting, or stair climbing are factors that increase the pain. (Tr. 302). At the hearing Poulton testified that sitting irritates his back injury and that he can sit for only ten minutes before he has to get into another position. (Tr. 394, 396-97). These statements by Poulton support his position that his impairments prevent him from performing sedentary work.

The ALJ held that Dr. Sirotenko's list of the plaintiff's daily activities, including cooking, cleaning, doing laundry, shopping and taking care of personal needs, was inconsistent with

the plaintiff's complaints of severe pain and significant functional limitations.  (Tr. 17).  While the plaintiff's daily activities are relevant in evaluating his subjective complaints, a plaintiff "'need not be an invalid to be found disabled' under the Social Security Act." 20 C.F.R. 404.1529(a); *see* <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2nd Cir. 1998); *quoting* <u>Williams v. Bowen</u>, 859 F.2d 255, 260 (2nd Cir. 1988).

The ALJ's determination regarding plaintiff's lack of credibility is not supported by substantial evidence.  There is no evidence of malingering on the part of the plaintiff in the record and, therefore, his subjective testimony is entitled to credibility as a matter of law. <u>Smolen</u>, 80 F.3d at 1284; SSR 96-7p.  Furthermore, there is substantial evidence in the record, particularly from his treating physicians, as well as from the plaintiff's testimony describing his condition to support a finding of credibility under SSR 96-7p.

## <u>CONCLUSION</u>

For the reasons set forth above I find that there is substantial evidence in the record to support the plaintiff's claim of disability.  Accordingly this case is remanded to the Secretary for immediate calculation of benefits and payment of DIB benefits.

ALL OF THE ABOVE IS SO ORDERED.


                                        S/Michael A. Telesca
_____
                                        MICHAEL A. TELESCA
                                   United States District Judge

Dated:    Rochester, New York
          April 4, 2008